**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **TERRIE LUSTER, INDIVIDUALLY** | ) | |
| **AND ON BEHALF OF ALL OTHERS** | ) | |
| **SIMILARLY SITUATED,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 3:21-CV-00698-MAB** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **JRE FINANCIAL, LLC,** | ) | |
| | | |
| **Defendant.** | | |

## <u>MEMORANDUM AND ORDER</u>

**BEATTY, Magistrate Judge:**

This matter comes before the Court on the issue of subject matter jurisdiction, as well as on Plaintiff's motion for expedited jurisdictional discovery (Doc. 20) and Defendant's motion to dismiss and/or motion to stay and compel arbitration (Docs. 13, 14). For the reasons set forth below, Plaintiff's motion for expedited jurisdictional discovery is DENIED. Defendant's motion to dismiss is DENIED without prejudice. Defendant is granted leave to refile, if appropriate, once the issue of subject matter jurisdiction is settled. Finally, because of the issues outlined in the ensuing Memorandum and Order, the Court will *sua sponte* order the parties to conduct jurisdictional discovery.

### PROCEDURAL AND FACTUAL BACKGROUND

The present matter was originally filed on May 13, 2021 in the Third Judicial Circuit, Madison County, Illinois (Doc. 1-2, p. 1). Plaintiff Terrie Luster ("Luster"), on behalf of herself and a class of similarly situated individuals, brings a total of four counts

against Defendant JRE Financial, LLC, doing business as AAA Community Finance ("JRE Financial"), for issuing loans that Luster argues are in violation of Illinois law (*Id.*). Luster describes that JRE Financial is an Illinois-based lender that, at the time of the events detailed in the complaint, operated out of its only physical location in Bethalto, Illinois (*Id.* at p. 2). JRE Financial offers customers loans that Luster describes as "installment loans" of up to $5,000 for any purpose (*Id.*).

Luster explains that JRE Financial issued her a loan for $475.00 in August 2020 that carried an annual percentage rate of 786.72%, a rate greater than the maximum 99% allowed by Illinois law at the time (*Id.* at p. 1). Even with this inflated rate, Luster agreed to the loan and set up the 24-scheduled payments for a total repayment of $3, 352.50 (*Id.* at p. 3). Luster began repayment the same month the loan was issued (August 2020), eventually paying approximately $1,400.00 before stopping payments (*Id.*). In March 2021, a JRE Financial collection specialist, operating out of JRE Financial's headquarters in Bethalto, Illinois, sent Plaintiff a letter attempting to collect the outstanding balance (*Id.* at pp. 3-4). The collection specialist called and sent text messages to Plaintiff's phone multiple times a week about the outstanding balance from a phone with a local Illinois area code (*i.e.,* 618) (*Id.* at p. 4). Luster alleges that JRE Financial was operating its lending business illegally throughout this time, as it was not licensed with the Illinois Department of Financial & Professional Regulation (*Id.* at p. 2).

Luster filed suit against JRE Financial for various violations of Illinois law, including engaging in a lending business without a license and issuing loans with an interest rate above the statutory maximum (*Id.* at pp. 7-8). Luster seeks to represent a class

of individuals who, during the time period previously discussed and within the appropriate statute of limitations, received loans from JRE Financial not exceeding $40,000 and for which they were charged interest rates in excess of the rates permitted by the Consumer Installment Loan Act, 205 ILL. COMP. STAT 670/1 *et seq.*, the Payday Loan Reform Act, 815 ILL. COMP. STAT 122/1-1 *et seq.*, the Predatory Laon Prevention Act, 815 ILL. COMP. STAT 123/1-1 *et seq.*, or the Illinois Interest Act, 815 ILL. COMP. STAT 205/1 *et seq.* (Doc. 1-2, p. 4).

JRE Financial was served with a copy of the complaint on May 27, 2021 and then removed this case from state court on June 24, 2021 pursuant to the Class Action Fairness Act of 2005 ("CAFA") (Doc. 1, p. 1). Under CAFA, United States district courts have original jurisdiction over any class action that (1) involves a class of 100 or more members; (2) where at least one member of the class is a citizen of a state different from any defendant; and (3) where the amount in controversy exceeds the sum or value of $5,000,000.00. *See* 28 U.S.C. § 1332(d)(4). In its notice of removal, JRE Financial alleged, as required, that the amount in controversy is over $5 million, the class contains more than 100 members, and at least one member of the putative class was not a citizen of the same state as JRE Financial (Doc. 1).

After removing this case to federal court, JRE Financial filed a motion, and supporting memorandum, to dismiss, or in the alternative, a motion to stay and compel arbitration (Docs. 13, 14). Soon after, on August 4, 2021, the Court issued a jurisdictional order requesting JRE Financial to correct certain factual allegations in the notice of removal so that the Court could ensure it has jurisdiction over the present matter (Doc.

15). JRE Financial filed its supplemental jurisdictional memorandum on August 11, 2021 (Doc. 17). Soon after, though, Luster filed a response to JRE Financial's jurisdictional memorandum, as well as her own motion for expedited jurisdictional discovery on August 18, 2021 (Docs. 19, 20). Luster explained in this motion that she believes an exception to CAFA, called the home state exception, may apply to the present matter, which would result in this case being remanded to state court. JRE Financial filed its response in opposition to the motion for discovery on September 1, 2021 (Doc. 22).

As the Court must ensure it has subject matter jurisdiction over the present matter, the Court will first address the deficiencies in JRE Financial's notice of removal, as well as Luster's motion for expedited jurisdictional discovery, before addressing JRE Financial's motion to dismiss.

## DISCUSSION

I.     Legal Standard

Federal courts "possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (7th Cir. 2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). District courts have subject matter jurisdiction only in cases that raise a federal question and cases in which there is diversity of citizenship among the parties. *See* 28 U.S.C. §§ 1331–32. Removal of actions from state court to federal court is governed by 28 U.S.C. § 1441, which provides, essentially, that "[a] defendant may remove a case to federal court

only if the federal district court would have original subject matter jurisdiction over the action." *Disher v. Citigroup Global Mkts. Inc.*, 419 F.3d 649, 653 (7th Cir. 2005); *See also Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

CAFA grants federal courts subject matter jurisdiction as to class actions, including putative class actions, in which claims are asserted on behalf of one hundred or more class members, at least one class member is a citizen of a state different from at least one defendant or, alternatively, at least one class member is a foreign state or a citizen or subject of a foreign state and at least one defendant is a citizen of a state (and vice versa), and the class claims exceed in the aggregate $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(1)(B), (d)(1)(D), (d)(2), (d)(5), (d)(6), (d)(7), (d)(8); *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir. 2010).

II.   JRE Financial's Notice of Removal and CAFA Jurisdiction

Before the Court can address JRE Financial's motion to dismiss and the merits of this case, the Court must ensure it has subject matter jurisdiction to hear this case. Subject matter jurisdiction cannot be waived and "always comes ahead of the merits." *Leguizamo-Medina v. Gonzales*, 493 F.3d 772, 774 (7th Cir. 2007). The party seeking removal bears the burden of demonstrating federal jurisdiction, "and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur*, 577 F.3d at 758 (*citing Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 911 (7th Cir.1993)).

Specifically for CAFA, it follows that "the party asserting federal jurisdiction under CAFA must establish that the requirements of § 1332(d) are satisfied." *Sabrina*

*Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017). "To meet this burden, a defendant seeking to remove to federal court must file in the district court a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Id.* (quoting 28 U.S.C. § 1446(a)). Overall, "[a] federal court's jurisdiction under CAFA is determined at the time of removal." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 515 (7th Cir. 2011) (citing *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010)).

At the time of removal, JRE Financial did not establish that this Court has subject matter jurisdiction over the present matter. The parties seem to agree that the only issue that could impact jurisdiction is whether there is minimal diversity, as the amount in controversy and the number of class members meet the aforementioned criteria as outlined by 28 U.S.C. § 1332.[1] CAFA outlines that "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10).[2] JRE Financial properly

---

[1] JRE Financial estimates that it issued approximately 10,000 consumer loans totaling approximately $6,000,000 in the three-year period prior to the complaint being filed (Doc. 1, p. 2). As a reminder, under CAFA, federal courts have jurisdiction over cases in which (1) the class consists of 100 or more members, *see* 28 U.S.C. § 1332(d)(5)(B); (2) any plaintiff is a citizen of a state different from that of any defendant, 28 U.S.C. § 1332(d)(2)(A); and (3) the aggregate amount of the plaintiffs' claims exceeds $5 million, exclusive of interest and costs. *Roppo*, 869 F.3d at 578 (citing 28 U.S.C. § 1332(d)).

[2] Although an LLC's citizenship is the citizenship of its members for purposes of diversity jurisdiction, *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir.1998), CAFA carves out a modification to this rule. "As part of CAFA, Congress chose to modify existing case law concerning the citizenship of unincorporated associations." *Bond v. Veolia Water Indianapolis, LLC*, 571 F.Supp.2d 905, 909 (S.D.Ind. 2008) (*citing* 28 U.S.C. § 1332(d)(10)). *Kurth v. Arcelormittal USA, Inc.*, No. 2:09-CV-108-RM, 2009 WL 3346588, at *7 (N.D. Ind. Oct. 14, 2009). Confusingly, both Luster and JRE Financial seem to think that JRE Financial could be a citizen of Florida as well because that is where the Chief Operating Officer lives (Doc. 17, 17-1). However, precedent is clear that citizenship for an LLC under CAFA is determined by principal place of business and the state in which it was organized.

pleaded that, as a Missouri-based limited liability company with a principal place of business of Bethalto, Illinois, JRE Financial is a citizen of both Missouri and Illinois under CAFA (Docs. 1, 17).

The larger issue, and the one which generated questions for the Court, was how JRE Financial explained Luster's citizenship, as well as the citizenship of other putative class members. First, JRE Financial described that Plaintiff was a *resident* of Missouri (Doc. 1, p. 2). "Residence and citizenship are not synonyms and it is the latter that matters for purposes of diversity jurisdiction." *Meyerson v. Harrah's E. Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002). The citizenship of a natural person for diversity purposes is determined by the person's domicile, which means the state where the person is physically present *with an intent to remain there indefinitely. See Pollution Control Indus. of Am., Inc. v. Van Gundy*, 21 F.3d 152, 155 n.4 (7th Cir. 1994). Additionally, it was unclear if any other putative class members were citizens of states other than Illinois or Missouri. In the notice of removal, JRE Financial lists three putative class members that resided outside of Missouri and Illinois at some point in the recent past, but not (necessarily) at the time of removal.[3] As such, the Court requested additional briefing on the issue of jurisdiction from JRE Financial.

On August 11, 2021, JRE Financial filed a jurisdictional memorandum along with an attached declaration from its Chief Executive Officer, Ryan Bartlett, in order to clear

---

[3] It was also unclear to the Court, at the time, if JRE Financial was attempting to argue minimal diversity was present because JRE Financial is a citizen of both Missouri or Illinois as opposed to Missouri *and* Illinois. *See* Doc. 15.

up the issue of jurisdiction for the Court, but unfortunately, this filing did not achieve that goal (Docs. 17, 17-1). In the jurisdictional memorandum, JRE Financial explained that for minimal diversity under CAFA, just one putative class member has to be a citizen of a state other than Missouri or Illinois. In support, JRE Financial points to three putative class members who received consumer loans within the time period at issue and are now residing outside Illinois and Missouri (Doc. 17, p. 3). For example, a consumer loan was provided to a Ms. Odell on or around March 13, 2020, who gave an address in the state of Missouri at that time. When she applied for refinancing in July 2020, she informed JRE Financial that she had moved to Oklahoma and had a new employer there (Doc. 17-1, p. 2). Therefore, JRE Financial argues that this putative class member's citizenship is Oklahoma, which is sufficient to establish the minimal diversity required by CAFA.

Luster filed a response to JRE Financial's jurisdictional memorandum, arguing that the memorandum was still deficient and did not establish that this Court has jurisdiction over the present matter. Essentially, the main thrust of Luster's argument is that while JRE Financial has included information about putative class members' citizenship, that information is dated and does not show that at least one putative class member was a citizen of a state other than Missouri or Illinois as of the date of the filing of this case, which was May 13, 2021 (Doc. 19, p. 3). Ultimately, Luster argues that JRE Financial's descriptions of putative class members' citizenship are inadequate "guesswork" and may have established putative class members' residency, but not citizenship (*Id.* at p. 4).

As previously noted, citizenship differs from residence when analyzing jurisdiction. Citizenship means domicile (the person's long-term plan for a state of habitation) rather than just current residence. *See In re Sprint Nextel Corp.,* 593 F.3d at 673-74 (distinguishing residence from citizenship for the purpose of § 1332(d)(4)). Citizenship "is the place one intends to remain." *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002); *see also Muscarello v. Ogle County Bd. of Comm'rs*, 610 F.3d 416, 424 (7th Cir. 2010) (listing evidence supporting plaintiff's citizenship as amount of time spent in state each year, place of voter registration, place of driver's license, address for government benefits, and address for tax bills). An allegation of residence is inadequate. *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 653 (7th Cir. 1998). Put simply, a person can have may residences, but only one place of citizenship.

In the notice of removal, JRE Financial outlines that Luster is a Missouri *resident* and this error is still not fixed through its jurisdictional memorandum. In fact, JRE Financial did not mention this issue at all in the supplemental memorandum (Docs. 1, p. 2; 17). Even if the Court were to determine that the additional information provided about the putative class members sufficed, Plaintiff's citizenship would still be at issue. The Court wishes to make clear that it is not simply pointing out JRE Financial's error "merely for the sake of hyper technical jurisdictional purity." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837 (1989). It is because the Seventh Circuit has repeatedly warned district courts to ensure that subject matter jurisdiction is properly pleaded. *See, e.g., Foster v. Hill*, 497 F.3d 695, 696-97 (7th Cir. 2007) ("It is the responsibility of a court to make an independent evaluation of whether subject matter jurisdiction exists in every

case."); *Johnson v. Wattenbarger,* 361 F.3d 991, 992 (7th Cir. 2004) (lamenting that litigants and judges all too often "disregard their first duty in every suit: to determine the existence of subject matter jurisdiction"); *Belleville Catering Co. v. Champaign Market Place, L.L.C.,* 350 F.3d 691, 692 (7th Cir. 2003) ("Once again litigants' insouciance toward the requirements of federal jurisdiction has caused a waste of time and money."); *Wisconsin Knife Works v. National Metal Crafters,* 781 F.2d 1280, 1282 (7th Cir. 1986) ("The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged."). As the party seeking to invoke federal jurisdiction, JRE Financial "bears the burden of demonstrating that the requirements for diversity are met." *Smart v. Local 702 Intern. Broth. of Elec. Workers*, 562 F.3d 798, 802-03 (7th Cir. 2009). JRE Financial's jurisdictional allegations, standing alone, must establish that diversity jurisdiction exists. The Court will not read between the lines or make assumptions regarding the citizenship of any party.

Additionally, to determine whether the Court has subject matter jurisdiction over a matter, the Court must receive information that as of the date of removal, there is at least one putative class member who has a different citizenship than the defendants. *See Myrick v. WellPoint, Inc.,* 764 F.3d 662, 665 (7th Cir. 2014) (noting "plaintiffs needed to produce some evidence that would allow the court to determine the class members' citizenships on the date the case was removed"). *See also Roberson v. Maestro Consulting Servs. LLC*, 507 F. Supp. 3d 998, 1012 (S.D. Ill. 2020).[4] While JRE Financial provides

---

[4] JRE Financial also cited to the *Roberson* case, arguing a tangential subject matter jurisdiction issue. JRE Financial seems to argue that its original notice of removal was appropriate because the allegations were

information about three putative class members and their citizenship in 2018 and 2020, there is no information before the Court as to a single putative class member's citizenship *at the time of removal*. The Court analyzes jurisdiction based on the events at the time the case is brought. If a case is initially filed in state court and then removed to federal court, the time-of-filing rule means the Court analyzes jurisdiction at the time of removal, as that is when the case first appears in federal court. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2009).

As such, JRE Financial has not corrected the deficiencies in its notice of removal and the Court is not assured that it has subject matter jurisdiction over the present matter, which brings the Court to Plaintiff's motion for expedited discovery.

---

made "on information and belief," which JRE Financial says is sufficient to establish citizenship (Doc. 17, p. 4). However, the critical case here is *Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019). In *Dancel*, the issue was whether a party had waived its opportunity to contest facts underlying jurisdiction and the Court noted that if there was an allegation, "even if only 'on information and belief,' that a specific member of the putative class had 'a particular state of citizenship,' then we may have accepted Dancel's waiver as establishing jurisdiction '*for now*.'" *Id.* (emphasis added). But that is *not* what happened in *Dancel*. In fact, the Seventh Circuit determined that the allegations failed to establish minimal diversity and remanded the case to the district court to permit jurisdictional discovery. *Id.* at 386. Ultimately, the best practice is to consider allegations made on personal knowledge in fulfilling the Court's threshold obligation to police for its federal subject matter jurisdiction. *See America's Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992) ("[O]nly the affidavit made on personal knowledge has any value ('to the best of my knowledge and belief' is insufficient), and it is useless because it say nothing about citizenship."); *Page v. Wright*, 116 F.2d 449, 451 (7th Cir. 1940) (an allegation of a party's citizenship for diversity purposes that is "made only upon information and belief" is unsupported).

III.    Plaintiffs' Motion for Expedited Jurisdictional Discovery and the Home State
        Exception

On August 18, 2021, Luster filed a motion for jurisdictional discovery, detailing that jurisdictional discovery was warranted to determine whether the home state exception to CAFA applies to the present case. JRE Financial filed its response in opposition arguing that since Plaintiff had not moved to remand the present matter within the 30-day time period outlined in 28 U.S.C. §1447, she had waived her arguments regarding jurisdiction. Additionally, JRE Financial argues that Luster has failed to argue with specificity what type of discovery she wants and "only hypothesizes" that this discovery related to citizenship of putative class members is readily available and that this information will lead to establishing the home state exception to CAFA (Doc. 22, pp. 1-2).

The home state exception to CAFA details that the district court *shall* decline to exercise its jurisdiction over a matter if "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed," and at least one defendant is a citizen of that same state. *Id.* § 1332(d)(4).[5] The home state exception is "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to

---

[5] Courts have previously examined the home state exception *sua sponte. See Int'l College of Surgeons v. City of Chi.*, 153 F.3d 356, 360 (7th Cir.1998) (district court has authority to *sua sponte* consider whether to abstain under judicially-created abstention doctrines); *See also Benson v. Fannie May Confections Brands, Inc.*, No. 17 C 3519, 2018 WL 1087639, at *2 (N.D. Ill. Feb. 28, 2018).

retain cases when the controversy is strongly linked to that state." *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 682 (7th Cir. 2006).

In raising the possibility of the home state exception, Luster bears the burden of persuasion and must submit evidence as to the citizenship of the putative class members. *Hart,* 457 F.3d at 681. *See also Myrick,* 764 F.3d at 665 (noting "plaintiffs needed to produce some evidence that would allow the court to determine the class members' citizenships on the date the case was removed").[6] Here, because Luster does not have access to this evidence, she has asked for the parties to be granted leave to conduct expedited jurisdictional discovery. Whether to allow jurisdictional discovery is within the discretion of the Court. *See Sanderson v. Spectrum Labs, Inc.*, 248 F.3d 1159 (7th Cir. 2000). In deciding whether to allow jurisdictional discovery as to the home state exception, courts in other districts have looked to two factors: (1) whether the plaintiff has made a sufficient showing that the home state exception likely applies, and (2) whether the requested class information is "readily available" to the defendant. *See Young v. Integrity Healthcare Comm., LLC,* 513 F. Supp. 3d 1043 (S.D. Ill. 2021) (citing *Baker v. PDC Energy, Inc.*, No. 14-CV-02537-RM-MJW, 2014 WL 6910207, at *1 (D. Colo. Dec. 9, 2014)).

Luster explains that the home state exception to CAFA is likely to apply to the

---

[6] Generally, the Court is entitled to consider any "evidence [that] sheds light on the situation which existed when the case was removed" to ascertain whether there is federal subject matter jurisdiction. *Harmon v. OKI Sys.*, 115 F.3d 477, 479-80 (7th Cir. 1997) (considering post-removal interrogatories to evaluate whether federal subject matter jurisdiction existed when a case was removed). *See also Cassens v. Cassens*, 430 F. Supp. 2d 830, 834 n.2 (S.D. Ill. 2006) ("[A] court is entitled to consider all facts that shed light on the existence of subject matter jurisdiction.").

present matter because, essentially, the claims are all based in Illinois and involve JRE Financials' lending business also located in Illinois.[7]  In its response, JRE Financial argues that Luster's arguments lack necessary specificity required to grant her motion (Doc. 22). The Court agrees, as Luster seems to only make conclusory statements as opposed to developing her arguments to persuade the Court of their validity. For example, Luster could have simply alleged that since JRE Financial had one business located in Bethalto, Illinois, it would be likely that the majority of its loans would go to local Illinois citizens or Missouri citizens because of Bethalto's proximity to the Missouri state line. Similarly, Luster has not sufficiently explained what types of discovery would suffice to determine citizenship of the putative class. *See In re Sprint*, 593 F.3d at 673-676 (stating that plaintiff must establish that two-thirds of the class members are citizens of the forum state "by a preponderance of the evidence" and describing the types of evidence that would suffice). Rather, Luster relies heavily on a case previously before this Court (*Young v. Integrity Healthcare Communities, LLC*) and argues the two are so alike that the Court should grant her motion. But this argument is unavailing. In *Young*, unlike the present matter, the

---

[7]  Both JRE Financial and Luster bring up the issue of choice of laws in their pleadings, with Luster arguing that Illinois law should apply to this case. The Court defers ruling on and addressing these arguments until the issue of subject matter jurisdiction is settled. When jurisdiction is based on diversity of citizenship, like it is in this case, the district court applies the choice-of-law rules of the state in which it sits, which is Illinois in this case. *Heiman v. Bimbo Foods Bakeries Distribution Co.*, 902 F.3d 715, 718 (7th Cir. 2018) (citations omitted). Illinois applies forum law unless an actual conflict with another state's law is shown. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020) (citing *Bridgeview Health Care Ctr. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014)). The party seeking the choice-of-law determination bears the burden of demonstrating a conflict exists between Illinois law and the law of another state such that will make a difference in the outcome. *Mesa Lab'ys, Inc. v. Fed. Ins. Co.*, 994 F.3d 865, 868 (7th Cir. 2021) (citations omitted). Now is not the time and this is not the Order in which the Court will resolve a choice of law issue; the Court encourages the parties to carefully evaluate the caselaw on this subject and then bring the issue to the Court's attention by way of motion if appropriate.

home state exception seemed to be in play from the notice of removal, which established that only approximately 20 putative class members were citizens of Missouri while the named parties (both the named plaintiff and defendant) were citizens of Illinois. *See Young,* 513 F. Supp. at 1046.

While the Court believes Luster's motion fails to make the requisite showing, there are also deficiencies with JRE Financial's notice of removal and supplemental jurisdictional brief. Minimal diversity at the time of removal has still not been established and the Court is apt to err on the side of caution when it comes to subject matter jurisdiction. Accordingly, the Court has determined that it will make a *sua sponte* determination to allow jurisdictional discovery to determine both if the home state exception applies and, if not, if minimal diversity exists to allow this Court to retain jurisdiction over the present matter. The Court feels this course of action is in line with the spirit of CAFA and the home state exception, which is designed to make federal courts available to national litigation, while allowing state courts to retain jurisdiction over local, state-related controversies. *In re Sprint*, 593 F.3d at 673 (one goal of CAFA was to ensure "national controversies" are decided in federal court). *See also Hart,* 457 F.3d at 682.

The parties are reminded that there are a variety of ways to determine citizenship of the putative class members. For example, the court may not draw conclusions about the citizenship of class members on things like their phone numbers and mailing addresses alone. *In re Sprint,* 593 F.3d at 673. The Court is also cognizant that JRE Financial has described the putative plaintiff class totaling upwards of 10,000 individuals (*See* Doc. 1, p. 2). Obviously, jurisdictional discovery of a class of this size would take some time

and likely not be expedited, further delaying the progression of this case. In similar situations, parties have taken a random sample of putative class members to ascertain the citizenship of the class as a whole. *See Keltner v. SunCoke Energy, Inc.*, No. 3:14-CV-01374-DRHPMF, 2015 WL 3400234, at *6 (S.D. Ill. May 26, 2015) (quoting *Myrick,* 764 F.3d at 665) ("Counsel for the proposed class assumed that there were only two options: determine the citizenship of every policyholder (expensive) or rely on assumptions (cheap). But there's at least one more option: take a random sample of policyholders (100, say), ascertain the citizenship of each of these on the date the case was removed, and extrapolate to the class as a whole"). Ultimately, the Court feels the parties are in the best position to determine what type of expedited jurisdictional discovery will suffice to address the Court's concerns with the issue of subject matter jurisdiction. The parties are therefore directed to meet and confer and prepare a joint proposal for conducting jurisdictional discovery. While the Court expects the parties to develop an approach that is amenable to both sides, the Court wishes to make clear that it is only contemplating some form of expedited, limited, written discovery.

## CONCLUSION

For the aforementioned reasons, Plaintiff's motion for expedited jurisdictional discovery is **DENIED** (Doc. 20). However, the Court has opted to make a determination to allow jurisdictional discovery given the issues outlined in this Memorandum and Order.

Defendant's motion to dismiss or, in the alternative, motion to compel arbitration is **DENIED without prejudice**, as the Court must ensure it has jurisdiction before

addressing the merits of this case. Defendant is granted leave to refile should it be appropriate after the parties conduct expedited jurisdictional discovery.

The parties are **ORDERED** to meet and confer and prepare a joint proposal for conducting jurisdictional discovery consistent with this Memorandum and Order. This proposal is due on or before **February 11, 2022,** and shall be submitted to the undersigned's proposed documents inbox. The Court will allow up to 90 days from today's date to complete this jurisdictional discovery. Once the Court is in receipt of the proposed discovery plan, the Court will set further deadlines as needed and/or set the matter for a status conference.

**IT IS SO ORDERED.**

**DATED: January 27, 2022**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**